# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIEL SANTOS, | : | |
| Plaintiff, | : | |
| v. | : | 3:05-cv-889 (WWE) |
| BROOKS PHARMACY, MAXI DRUG, INC., and JEAN COUTU GROUP PJC USA, INC., | : | |
| Defendants. | : | |

## MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This action arises from plaintiff Daniel Santos' claims that defendants Brooks Pharmacy, Maxi Drug, Inc. and Jean Coutu Group PJC USA, Inc.[1] discriminated and retaliated against him on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA") and the Connecticut Fair Employment Practices Act ("CFEPA"). Plaintiff also asserts a state law claim of promissory estoppel. Defendants move for summary judgment.

## BACKGROUND

Plaintiff was employed by defendants in their Bloomfield, Connecticut store from January 2001 until November 2005. At the time of his hire, he was forty-eight years old. He was hired as a key closer/shift supervisor. Plaintiff did not own an automobile and had no means of transportation; he claims he took the position at Brooks because it was within walking distance of his home. Although plaintiff had other

---

[1] Maxi Drug, Inc. and Jean Coutu Group PJC USA, Inc. are the corporate parents of Brooks Pharmacy.

1

retail experience, he had never before worked at a pharmacy.

Not long after plaintiff was hired, an assistant manager position became available in the Bloomfield store. Despite his expression of interest, plaintiff was not offered this position. Instead, it was given to a co-worker, Bobbi Hanthorn, another key closer, who was younger than plaintiff and had less retail experience. After Hanthorn left the position, it was filled by another younger and less experienced applicant.

Defendants assert that the Bloomfield store had a history of mismanagement and poor conditions and that Brooks had decided that any Bloomfield employee seeking advancement would require training at a more effectively managed store. Defendants approached plaintiff about advancement opportunities elsewhere: promotions and lateral moves that would provide him with the necessary training and requisite assessment by a strong training manager. Plaintiff declined these opportunities because of his lack of a car; each of the stores in question was located further from his home than the Bloomfield store. Instead, plaintiff told defendants that he wanted to be promoted at the Bloomfield location.

Meanwhile, Rob Boucher became the store manager of the Bloomfield store. Plaintiff believed that Boucher was not complying with store policies and he brought this matter to the attention of the assistant manager and directly to Boucher. He then reported his concerns to the district manager. On October 8, 2002, plaintiff wrote a letter to Michel Coutu, president of Brooks. In this letter, plaintiff articulated many concerns about the Bloomfield store, including Boucher's alleged improper conduct, and also provided Coutu with extensive information about plaintiff's job history, his qualifications, and defendants' failure to promote him. Boucher was ultimately

2

terminated.

On June 3, 2003, plaintiff filed a charge with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunities Commission ("EEOC") alleging age discrimination, manifested in the fact that he was not promoted.

Following the filing of his charges, the current manager of the Bloomfield store, Sarah Huberty, wrote three evaluations of plaintiff's performance. She filed memos in plaintiff's personnel file regarding plaintiff's failure to follow store protocol (finishing a shift without completing paperwork), a failure to communicate, and plaintiff's involvement in a disagreement with a customer.

Plaintiff left Brooks Pharmacy voluntarily in November 2005 because he was offered a higher paying job elsewhere.

**DISCUSSION**

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw

3

all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 24.

**I.     Age Discrimination**

Plaintiff alleges that he was discriminated against because of his age in violation of the ADEA and CFEPA.  Because Connecticut law follows the ADEA in all parts relevant to the instant matter, no distinction will be made in considering plaintiff's ADEA and CFEPA claims.  Burbank v. Blumenthal, 75 Fed. Appx. 857, 858 (2d Cir. 2003).

The ADEA prohibits treating an age-protected individual less favorably than other individuals on account of his age.  29 U.S.C. § 623(a).  Stanojev v. Ebasco Services, Inc., 643 F.2d 914, 923 (2d Cir. 1981).  A cause of action under the ADEA requires evidence that plaintiff's age was a factor that made a difference in deciding conditions of plaintiff's employment. Geller v. Markham, 635 F.2d 1027, 1035 (2d Cir.1980), cert. denied, 451 U.S. 945 (1981).  The ADEA requires that "an employee's age be treated in a neutral fashion, neither facilitating nor hindering advancement, demotion or discharge."  Parcinski v. Outlet Co., 673 F.2d 34, 37 (2d Cir. 1982), cert. denied, 459 U.S. 1103 (1983).

Where there is no direct evidence of discrimination, an ADEA claim is analyzed under the shifting burdens described in McDonnell Douglas Corp. v. Green, 411 U.S.

4

792, 802-804 (1973).[2]  Under this rubric, plaintiff must first establish a prima facie case of discrimination.  Getschmann v. James River Paper Co., Inc., 822 F.Supp. 75, 77 (D.Conn.1993).  Defendants then must articulate a legitimate, non-discriminatory reason for failing to promote plaintiff. The reason provided must be both "clear and specific."  Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985), cert. denied, 474 U.S. 829 (1985).  If defendants satisfy this requirement, plaintiff must show that defendants' proffered reason is a pretext for discrimination.  Plaintiff is not required to prove that the prohibited motivation was the sole or even the principal factor in the decision, or that the employer's proffered reasons played no role in the employment decision, but only that those were not the only reasons and that plaintiff's protected status contributed to the employer's decision.  Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 78 (2d Cir. 2001).  At all times, plaintiff bears the burden of persuading the trier of fact that the defendant intentionally discriminated against him. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) .

A prima facie case of age discrimination requires that plaintiff show that: 1) he was a member of the statutorily age-protected group of 40 to 70 years of age; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) the adverse action took place under circumstances giving rise to the inference of discrimination.  Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003).  At this stage, plaintiff's burden is minimal.  Fisher v. Vassar College, 114 F.3d 1332, 1335 (2d Cir.

---

[2]An ADEA claim is analyzed pursuant to the same framework applicable to Title VII as considered in McDonnell Douglas. Scaria v. Rubin, 117 F.3d 652, 653 (2d Cir. 1997).

5

1997), cert. denied, 522 U.S. 1075 (1998), and rehearing denied, 523 U.S. 1041 (1998).

Defendants do not dispute that plaintiff, born in 1952, is a member of a protected class. They also do not contest the second element of plaintiff's prima facie case: the record demonstrates that plaintiff consistently received salary increases and was offered career advancement opportunities throughout his employment at Brooks. Defendants do argue that plaintiff fails to establish the third and fourth prongs of the test. They claim that plaintiff did not suffer an adverse employment action, thereby obviating prongs three and four.

In order to sustain an adverse employment action, plaintiff must demonstrate that he has endured a materially adverse change in the terms and conditions of his employment. Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 238 (2d Cir. 2007). Not every unpleasant matter short of discharge or demotion creates a cause of action for violation of the ADEA. Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997). In order to demonstrate a materially adverse change in employment, plaintiff must illustrate an alteration more disruptive than inconvenience or a change in job responsibilities. Fairbrother v. Morrison, 412 F.3d 39, 56 (2d Cir. 2005). Materially adverse changes must be significant and may include: "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significant diminishment of material responsibilities, or other indices . . . unique to a particular situation." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).

In some instances, failure to promote may be sufficient to constitute a materially adverse change in employment. Mormol v. Costco Wholesale Corp., 364 F.3d 54, 57 (2d Cir. 2004). See also Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002) (refusal to promote constitutes an adverse employment action). However, where an employee maintains the same salary, the same benefits, works the same hours and has the same opportunities for promotion, courts have found that there is no materially adverse change. Garber v. New York City Police Dep't., 1997 WL 525396, *4 (S.D.N.Y.).

Plaintiff claims that he satisfies the requirements of a prima facie case of age discrimination in that the failure to promote does constitute an adverse employment action under the ADEA. He asserts that he was denied promotions because of his age, thereby giving rise to an inference of discrimination.

Assuming, arguendo, that plaintiff did suffer an adverse employment action and does meet the de minimus requirements of a prima facie case, the Court will analyze his claims pursuant to the McDonnell Douglas test.

In response to plaintiff's allegations, defendants argue that they did not discriminate against plaintiff and assert that plaintiff was offered several opportunities to advance his career at Brooks. He was approached regarding a promotion to assistant manager at Brooks' Stafford Springs, Connecticut store. A lateral job opportunity at Brooks' Hartford, Connecticut store was also discussed; defendants assert that they informed plaintiff that this move would allow management a better opportunity to assess plaintiff's abilities and job performance, thereby placing plaintiff in a better position for promotion. Defendants state that plaintiff rejected these opportunities. Plaintiff refused to consider employment at any Brooks location that was not within walking

distance of his apartment and stated in his deposition that he wanted to be promoted at the Bloomfield store.

Plaintiff counters that defendants' alleged job offers were not bona fide offers of employment. He asserts that if the Stafford Springs offer was valid, it would have included a raise in pay so that he could purchase the transportation necessary to accept the job. He posits that he was not provided with any specifics about the job, such as rate of pay, hours or potential start date, and that this demonstrates the disingenuous nature of the "offer." He also claims that defendants' explanation that promotions would not be offered to individuals within the Bloomfield store was pretextual. He argues that the fact that shortly after he was hired a younger employee with less retail experience than plaintiff, Bobbi Hanthorn, was promoted to assistant manager from within the Bloomfield store is evidence of the falsity of defendants' proffered reason and indicative of discrimination.[3]

The Court finds plaintiff's claim of discriminatory intent unavailing. In his deposition, upon being asked the source of his belief that defendants discriminated against him because of his age, he testified that defendants' expressed policy of promoting people from other stores was the source of this perception. Plaintiff explained:

> Someone with a certain skill set, good business people place capable people, and you surround yourself with the most highly qualified person you can find. That's how I've always been trained, to surround myself with very successful people that have the highest skill set. . . . Certainly, the way I look at my own skill set, I was that productive individual with superior

---

[3]Plaintiff fails to cite the twelve other assistant managers and store managers hired during his tenure who were all hired from stores other than the Bloomfield store.

> customer service skills and knowledgeable about policies and so on and so forth. So I would say to make a carte blanche statement that "we will not promote irregardless" tells me that – I look at that as discrimination.

(Santos Depo., pages 166-67). This theory does not withstand scrutiny as to age discrimination. At most, it is reflective of defendants' business policies and decisions. It is not the Court's place to evaluate a business's internal procedures. "The law is well-established that federal courts hearing discrimination claims do not sit as a super-personnel department to reexamine a firm's business decisions . . . ." <u>Newsom-Lang v. Warren International, Inc.</u>, 2003 WL 22490366, *2 (2d Cir.)

However, plaintiff testified that because he is in the protected age group, such policy constituted age discrimination against him personally. He asserts that the fact that he was not offered opportunities for promotion demonstrates defendants' age discrimination. The fact that plaintiff was offered opportunities that he rejected belies his argument. See <u>Wood v. Dresser Industries, Inc.</u>, 1992 WL 373636, *15 (W.D.N.Y.) (granting defendant's motion for summary judgment upon finding that plaintiff rejected job offers and does not show a pretext for discrimination on the part of defendant). Plaintiff's unsubstantiated conjecture and broad allegations of discriminatory practice are insufficient to undermine defendants' proffered reasons for their acts. See <u>Gordon v. Kings County Hospital Center</u>, 2000 WL 1868091, *5-6 (E.D.N.Y.) (granting summary judgment upon finding that plaintiff refused jobs when offered to her and that her argument relied upon her subjective belief that she was a victim of age discrimination).

Defendants' motion for summary judgment will be granted on this ground.

**II.     Retaliation**

Plaintiff asserts that defendants retaliated against him as a result of his filing a complaint with the CHRO and the EEOC and for the letter he wrote to Michel Coutu, the president of the company of which Brooks is a wholly-owned subsidiary. He claims that defendants' failure to promote him and his subsequent negative employment evaluations constitute evidence of this retaliation.[4]   Defendant disagrees.

In order to establish a claim for retaliation under the ADEA, plaintiff must demonstrate that: 1) the employee was engaged in a protected activity; 2) the employer was aware of the employee's participation in the protected activity; 3) the employee suffered an adverse employment action taken by the employer; and 4) there was a causal connection between the employee's protected activity and the adverse action taken by the employer, i.e., that a retaliatory motive played a part in the adverse employment action. Kessler v. Westchester County Dept. of Human Services, 461 F.3d 199, 205-06 (2d Cir. 2006).

The anti-retaliation provision of the ADEA does not protect an individual from all retaliation, but does provide protection from retaliation that causes or produces an

---

[4] Plaintiff also cites defendants' failure to train him on the one-hour photography machine, failure to inform him about a new employee and being asked to provide a doctor's note for one day's absence as retaliatory acts, but criticizes defendants' focus on these acts as "minimizing" his claim of retaliation. Because plaintiff does not rely on these alleged examples for support of his argument regarding retaliation at this stage of the proceedings, the Court will not consider same. However, were the Court to conduct such analysis, none of these allegations rises to the level necessary to demonstrate discrimination.

injury or harm.[5] Plaintiff must demonstrate that a reasonable employee would have found the questioned action "materially adverse." The United States Supreme Court has defined this as that which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Railway Co. v. White, – U.S. – , 126 S. Ct. 2405, 2414-15 (2006). Plaintiff's claim of discrimination need not be found valid in order to establish a claim of retaliation. Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990).

Once plaintiff has succeeded in making a prima facie case, the Court's analysis follows the McDonnell Douglas paradigm. See Boise v. Boufford, 121 Fed.Appx. 890, 892 (2d Cir. 2005).

Plaintiff claims that he engaged in protected activities by filing a complaint with the CHRO and the EEOC and by sending the letter to Michel Coutu, detailing what he saw as another employee's shortcomings and illustrating his own abilities that make him a prime candidate for promotion. "Protected activity generally takes the form of the filing of a formal complaint of discrimination with an administrative agency, but an internal complaint of discrimination also constitutes a protected activity." Esterquest v. Booz-Allen & Hamilton, Inc., 2002 WL 237846, *8 (S.D.N.Y.). He asserts that defendants were aware of his complaint and letter and argues that defendants responded in direct correlation to these activities by failing to promote him and placing

---

[5]The anti-retaliation provision of the ADEA provides in relevant part: "It shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner, in any investigation, proceeding or litigation under this act." 29 U.S.C. § 623(d).

negative evaluations in his personnel folder without discussing such evaluations with him first.

Assuming, arguendo, that plaintiff does make out a prima facie case of retaliation, plaintiff does not rebut defendants' proffered nondiscriminatory reasons for their actions. As to plaintiff's claim that defendants' failure to promote him at the Bloomfield store location, defendants have demonstrated, as discussed supra, that they offered plaintiff opportunities for advancement and that he rejected such offers. Plaintiff's argument that his lack of promotion is demonstrative of some retaliatory intent, therefore, is unavailing. Regarding the allegedly negative evaluations, defendants posit that these evaluations were in no way related to plaintiff's complaint or letter or to any adverse action plaintiff may have suffered. Huberty, the author of the three evaluations – two of which were written without first conferring with plaintiff – testified that she did not know the substance of plaintiff's lawsuit at the time she wrote them. These evaluations concerned: 1) a claim that plaintiff had finished his shift without completing closing paperwork; 2) a statement that Huberty "cannot count on Dan to do anything that is not specifically asked of him;" and 3) a warning regarding a disagreement with a customer. Plaintiff does not address the validity or invalidity of the evaluations and has failed to show how these evaluations in any way hampered his advancement at the company. Accordingly, his argument that they were motivated by retaliatory intent is unfounded.

The Court will grant defendants' motion for summary judgment on this ground.

### III. Promissory Estoppel

Plaintiff asserts that he relied upon Brooks' "Open Door Policy" and its implied promise of protection from retaliation as evidenced by the letter he wrote to Coutu relating his concerns about the operations of the Bloomfield store and the manner in which he was being treated. He claims that he was then retaliated against for this act in that he was denied opportunities for promotion and was subject to disciplinary action in the form of the negative evaluations placed in his personnel file.

In order to establish a claim of promissory estoppel, plaintiff must demonstrate: 1) the existence of a clear and definite promise 2) which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third party 3) which does induce such action or forbearance and that 4) injustice can be avoided only by enforcement of the promise. D'Ulisse-Cupo v. Bd. of Dirs. of Notre Dame High Sch., 202 Conn. 206, 213 (1987). See Restatement (Second) of Contracts § 90 (1973).

Plaintiff alleges that defendants breached their own "Open Door Policy," by which employees are encouraged to discuss any issues, problems or suggestions with senior management. He claims that this policy contains the inherent promise that should an employee choose to utilize such policy, he or she would not be retaliated against.

Defendants' Open Door Policy provides:

> The purpose of the Open Door Policy is to maintain a channel of communication which may be used by an Associate to discuss working conditions which they find disturbing and seek to have the problem corrected if such action is determined to be warranted.

13

> Even minor frustrations, if not expressed, can lead to a negative attitude toward another employee, your supervisor and the Company. Ultimately, this can only lead to problems with on-the-job performance, or compliance with work rules. The open door policy has been developed and outlined here precisely to avoid such problems. In the spirit of this policy, all Brooks Pharmacy Associates are encouraged to discuss any issues, problems, or suggestions with their respective supervisor or with senior management of the Company should the need arise. Also, the Human Resources Department is always available to discuss any issues with you that you may have.

The Court finds that the plaintiff has not presented evidence of any correlation between plaintiff's utilization of the Open Door Policy and his allegations of retaliation. As explained, supra, plaintiff was offered opportunities for advancement which he rejected and he did not demonstrate how the evaluations placed in his personnel file were unfounded, premised upon a retaliatory motive, or affected his career at Brooks in any way. For these reasons, the Court will grant defendants' motion for summary judgment on plaintiff's claim of promissory estoppel.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment [Doc. #38]. The Clerk is instructed to close this case.

Dated this __17th___ day of January, 2008 at Bridgeport, Connecticut.

_____/s/_____
        Warren W. Eginton
        Senior United States District Judge